UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KAYTIE B., <br><br>　　　　　Plaintiff, <br><br>v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION** <br><br><br>Case No. 2:21-cv-00134 <br><br>Magistrate Judge Daphne A. Oberg |

　　　　Plaintiff Kaytie B., by and through her legal guardian, Jill Johnson of the Utah Department of Human Services, filed this action for judicial review of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85. (*See* Compl., Doc. No. 4; Mot. for Review of Agency Action ("Opening Br.") 1, Doc. No. 20.) The State of Utah Division of Child and Family Services ("DCFS") originally filed the application on Ms. B.'s behalf when she was fifteen years old.[1] (*See* Opening Br. 1–2, Doc. No. 20.) The Administrative Law Judge ("ALJ") determined Ms. B. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 15–27, Doc. No. 16.) Ms. B. argues the ALJ erred by failing to properly consider her intellectual disability. (Opening Br. 2, Doc. No. 20.) She asks the court to reverse and remand for an award of benefits or, in the alternative, to remand for a new hearing. (*Id.*)

---

[1] Plaintiff was eighteen years old when she filed this action for judicial review. (*See* Opening Br. 1, Doc. No. 20.) Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

The court[2] has carefully reviewed the record and the parties' briefs.[3] Because the ALJ failed to properly consider Ms. B.'s alleged intellectual disability, the Commissioner's decision is reversed. However, Ms. B. has not established, at this stage, that she is entitled to an award of benefits as a matter of law. Accordingly, the case is remanded for further administrative proceedings.

STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

---

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 12.)

[3] The appeal is determined on the written memoranda as oral argument is unnecessary. DUCivR 7-1(g).

2

substantial evidence." *Lax*, 489 F.3d at 1084. The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

A child under the age of eighteen is considered disabled under the Social Security Act if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). But a child who "engages in substantial gainful activity" may not be considered disabled. *Id.* § 1382c(a)(3)(C)(ii).

The ALJ employs a three-step sequential evaluation to determine whether a child is disabled, considering:

1) whether the child is engaged in substantial gainful activity;

2) whether the child has a medically determinable impairment or combination of impairments which is severe; and

3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in the appendix of the relevant disability regulation.

*See* 20 C.F.R. § 416.924(a)–(d); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). If the impairments do not meet or medically equal a specific listing, the ALJ considers whether they functionally equal the severity of the listings by evaluating six "domains" of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

3

oneself; and (6) health and physical wellbeing. 20 C.F.R. § 416.926a(b)(1)(i)–(vi); *Briggs*, 248 F.3d at 1237–38. To functionally equal the severity of a listing, the impairment must result in marked limitations in at least two of the six domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a); *Briggs*, 248 F.3d at 1237 n.1.

PROCEDURAL HISTORY

DCFS applied for supplemental security income on Ms. B.'s behalf on May 31, 2018, when she was fifteen years old. (Tr. 15, 191.) At the time, Ms. B. was living in foster care and DCFS had legal guardianship over her. (*Id.* at 94, 590.) After an administrative hearing, (*see id.* at 33–58), the ALJ issued a decision on November 2, 2020, finding Ms. B. not disabled and denying benefits, (*id.* at 15–27).

At step one of the sequential evaluation, the ALJ found Ms. B. had not engaged in substantial gainful activity. (*Id.* at 16.) At step two, the ALJ found Ms. B. had the severe impairments of anxiety disorder and PTSD, and found her obesity was a nonsevere impairment. (*Id.*) At step three, without discussing any specific listing, the ALJ found "the medical evidence [did] not establish that the claimant's impairment(s), individually or in combination, [met] or equal[ed] in severity the criteria of a listed impairment." (*Id.*) The ALJ then found Ms. B.'s impairments did not functionally equal the severity of the listings based on the six domains of functioning. (*Id.* at 16–27.) Specifically, the ALJ determined she had less than marked limitations in all six domains and, therefore, was not disabled. (*Id.*)

The Appeals Council denied Ms. B.'s request for review, (*id.* at 1), making the ALJ's decision final for purposes of judicial review.

4

DISCUSSION

Ms. B. contends the ALJ erred by failing to properly consider her intellectual disability at steps two and three. Specifically, she argues the ALJ erred by (1) failing to find her intellectual disability to be a medically determinable, severe impairment at step two; and (2) failing to analyze whether her impairment met or medically equaled Listing 112.05, the listing for "intellectual disorder" in children, at step three. (Opening Br. 2, 11, Doc. No. 15.) Ms. B. argues these errors also tainted the ALJ's analysis of functional equivalency at step three. (*Id.*)

1. Failure to Address Ms. B.'s Intellectual Disability at Step Two

Step two requires the ALJ to determine whether the claimant has a "medically determinable impairment(s) that is severe." 20 C.F.R. § 416.924(c). An impairment is medically determinable if it is "established by objective medical evidence from an acceptable medical source." *Id.* § 416.921. If the claimant "do[es] not have a medically determinable impairment, or if [the] impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the claimant will be found not disabled. *Id.* § 416.924(c).

The ALJ did not address Ms. B.'s alleged intellectual disability in his step two analysis. (*See* Tr. 16.) Ms. B. describes her intellectual disability as her primary impairment, and she contends the ALJ's failure to find it to be a medically determinable, severe impairment at step two tainted his analysis of her functional limitations at step three. (Opening Br. 2, 5–8, 11, Doc. No. 20.) The Commissioner responds that any error at step two was harmless because the ALJ found other severe impairments and proceeded to step three of the sequential analysis. (Answer Br. 1–2, 6–8, Doc. No. 24.)

The Commissioner relies on the Tenth Circuit's opinion in *Allman v. Colvin*, in which the court held "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." 813 F.3d 1326, 1330 (10th Cir. 2016) (addressing an adult disability claim). This is because "[a]s long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Id.*; *see also* 20 C.F.R. § 416.924(a)–(d). And after step two, the ALJ is required to consider the limiting effects of both severe and nonsevere impairments. *Allman*, 813 F.3d at 1330. In other words, as long as the ALJ proceeds beyond step two and considers all impairments in subsequent steps, failure to find a particular impairment severe is harmless.

But here, there is no indication the ALJ considered all impairments at step three. Specifically, there is no indication the ALJ considered Ms. B.'s alleged intellectual disability to be a medically determinable impairment at all—severe or nonsevere. The ALJ discussed only three impairments at step two: anxiety disorder, PTSD, and obesity. (Tr. 16.) Although the ALJ mentioned Ms. B.'s IQ test results and diagnosis of mild intellectual disability in his step three functional equivalency analysis, (*see id.* at 19, 21–23), it is unclear whether the ALJ considered Ms. B. to have a medically determinable impairment based on this evidence. The ALJ did not state, in any portion of his decision, that Ms. B. had an impairment related to intellectual disability.

The ALJ's failure to address this issue is significant because, for purposes of the step three analysis, "limitations in functioning must result from [the claimant's] medically determinable impairment(s)." 20 CFR 416.924a(b)(2). Because the ALJ need only consider functional limitations resulting from medically determinable impairments at step three, any error in failing to find Ms. B.'s intellectual disability to be a medically determinable impairment at

6

step two cannot be deemed harmless as a matter of law. The ALJ's failure to address whether Ms. B.'s intellectual disability was a medically determinable impairment leaves the court unable to determine whether the ALJ properly considered all of Ms. B.'s impairments in assessing her functional limitations at step three. Thus, the ALJ's decision fails to "provide this court with a sufficient basis to determine that appropriate legal principals have been followed," which is grounds for reversal. *See Jensen*, 436 F.3d at 1165.

The record contains ample evidence to support a finding that Ms. B. had a medically determinable impairment related to intellectual disability. Ms. B. underwent IQ testing three times between 2018 and 2020. In February 2018, a WISC-5 assessment administered by Dr. Karen Malm resulted in a full-scale IQ of 70, which falls in the "extremely low range of functioning." (Tr. 591, 593.) In December 2019, a WAIS-IV assessment administered by Dr. Eileen Booth resulted in a full-scale IQ of 73, which falls in the "extremely low to borderline" range of intellectual functioning and in the fourth percentile for same-aged peers. (*Id.* at 680–81.) WAIS-IV testing was administered again only a few months later by Dr. Sarah Goldman, resulting in a full-scale IQ of 77, which falls in the "borderline" range. (*Id.* at 688–89, 693.) Dr. Goldman found Ms. B.'s "overall functioning [was] consistent with that of individuals with mild Intellectual Disability" and diagnosed her with "Intellectual Disability; Mild." (*Id.* at 695.) Thus, Ms. B. presented objective medical evidence from acceptable medical sources indicating the presence of an intellectual impairment. *See* 20 C.F.R. § 416.921. Ms. B. also presented evidence that she had qualified for and received special education services since fifth grade, at least in part due to her intellectual disability. (*Id.* at 253–54, 479.)

In light of the evidence, the ALJ was required to either (1) explain why he did not consider Ms. B.'s intellectual disability to be medically determinable, or (2) consider the effects

of this impairment on Ms. B.'s functional limitations at step three. Because the ALJ did not address whether Ms. B.'s intellectual disability was a medically determinable impairment, and it is unclear whether he treated it as a medically determinable impairment for purposes of assessing Ms. B.'s functional limitations at step three, the ALJ's decision must be reversed.

2. Failure to Address Listing 112.05

Ms. B. claims the ALJ also erred by failing to consider whether she met or medically equaled Listing 112.05, the listing for "intellectual disorder" in children. (Opening Br. 2, 8–10, Doc. No. 20.)

If the evidence implicates a specific listing, the ALJ is required to evaluate whether the claimant's condition meets or equals that listing. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (evaluating an adult disability claim). As relevant here, Listing 112.05 is met if both of the following requirements are satisfied:[4]

1. Significantly subaverage general intellectual functioning evidenced by a or b:
    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
    a. Understand, remember, or apply information (see 112.00E1); or
    b. Interact with others (see 112.00E2); or
    c. Concentrate, persist, or maintain pace (see 112.00E3); or

---

[4] These are the requirements to satisfy paragraph B of Listing 112.05. Paragraph A addresses children with a "cognitive inability to function at a level required to participate in standardized testing of intellectual functioning." 20 C.F.R. part 404, subpart P, App. 1, § 112.05(A). Paragraph A is inapplicable because Ms. B. participated in standardized IQ testing.

8

                d.   Adapt or manage oneself (see 112.00E4).

20 C.F.R. part 404, subpart P, App. 1, § 112.05(B).

      The record evidence in this case implicates Listing 112.05. One of Ms. B.'s IQ test results met the requirements of subparagraph 1: the February 2018 WISC-5 assessment showing a full-scale IQ score of 70. (Tr. 591, 593.) And the record contains evidence of deficits in adaptive functioning in the areas listed under subparagraph 2. For example, an assessment by the Utah Division of Services for People with Disabilities ("DSPD") in February 2019 identified Ms. B.'s primary diagnosis as "mental retardation—mild" and found numerous limitations in "personal living skills" and "community living skills," including maintaining personal hygiene, cooking simple foods, operating a washing machine, handling money (noting difficulty counting change from a five-dollar bill), and acting appropriately in public places. (*Id.* at 619, 623–28.) Another DSPD assessment in October 2019 found similar functional limitations, noting Ms. B. needed assistance caring for her clothes, choosing appropriate outfits for the weather or occasion, and with "functional academics" such as reading signs and counting change. (*Id.* at 603–10.) Ms. B.'s foster mother also reported deficits in adaptive functioning, including difficulty understanding the value of money and maintaining personal hygiene without assistance. (*Id.* at 687.) This evidence, in addition to the objective testing described above, is sufficient to implicate Listing 112.05, requiring the ALJ to consider it.

      The ALJ's general statement that Ms. B.'s impairments did not meet or medically equal any listed impairment is insufficient to demonstrate he adequately considered Listing 112.05. *See Clifton*, 79 F.3d at 1009 (finding "[s]uch a bare conclusion is beyond meaningful judicial review"). The ALJ failed to identify Listing 112.05 as a relevant listing, discuss the applicable evidence, or explain why Ms. B.'s impairments did not meet this listing. This failure constitutes reversible error. *See id.*

The Commissioner argues the ALJ's functional equivalence findings provide a proper basis to affirm the ALJ's finding that Ms. B. did not meet Listing 112.05. (Answer Br. 2, 8–11, Doc. No. 24.) Specifically, the Commissioner argues the ALJ's finding that Ms. B. had less than marked limitations in the six domains of functioning is sufficient to support a finding that Ms. B. did not have marked limitations in the four areas of mental functioning in Listing 112.05(B) (known as the "paragraph B" criteria). (*Id.*) But the Tenth Circuit rejected a comparable argument in *Huffman v. Astrue*, 290 F. App'x 87 (10th Cir. 2008) (unpublished). In *Huffman*, as in this case, the Commissioner argued the lack of specific findings concerning whether a child's impairments met the paragraph B criteria for a listed impairment was saved by the ALJ's detailed discussion of the six domains used to measure functional equivalency. *Id.* at 89. The Tenth Circuit acknowledged "the categories are similar," but noted "the Commissioner's rules for determining childhood disability claims explain that the six 'domains are specifically designed for determining functional equivalence and are completely delinked from the mental disorders and other listings.'" *Id.* (quoting 65 Fed. Reg. 54746, 54755 (Sept. 11, 2000)). The court also noted the ALJ did not mention the four paragraph B criteria in his discussion of the six domains. *Id.* Under these circumstances, the court concluded the ALJ's determination that the claimant's impairments did not meet a listing was "beyond meaningful judicial review." *Id.* (quoting *Clifton*, 79 F.3d at 1009).

The Commissioner suggests the unpublished *Huffman* decision runs contrary to earlier, binding Tenth Circuit precedent in *Fisher-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). In *Fisher-Ross*, the court held "an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Id.* at 733. But *Huffman* and *Fisher-Ross* address

10

different regulations and sequential processes. The *Fisher-Ross* court considered an adult disability claim. It did not address whether the six domains of functional equivalence in child disability claims may properly substitute for an analysis of the paragraph B criteria. Here, the ALJ's decision contains no discussion of the four areas of mental functioning under paragraph B. Where these categories are not identical to the six domains, the ALJ's findings regarding the six domains form an insufficient basis to uphold the ALJ's conclusion that Ms. B. did not meet any listed impairment. *See Huffman*, 290 F. App'x at 89.

Moreover, as discussed above, the ALJ's functional equivalence analysis is tainted by his failure to address whether Ms. B.'s intellectual disability was a medically determinable impairment. Although the ALJ mentioned Ms. B.'s IQ testing and diagnosis of mild intellectual disability, it is unclear whether the ALJ considered this to be a medically determinable impairment which could give rise to functional limitations at step three. Because it is unclear whether the ALJ properly considered this impairment in his functional equivalency analysis, the ALJ's functional equivalency findings cannot substitute for an analysis of Listing 112.05. The ALJ's failure to address Listing 112.05 requires reversal.

    3.    <u>Request for Remand for an Award of Benefits</u>

Ms. B. requests that this case be remanded for an award of benefits rather than for further administrative proceedings, arguing the court should find her intellectual disability meets the requirements of Listing 112.05. (Opening Br. 14, Doc. No. 20.)

Federal district courts have "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The statute is silent as to whether the judgment may include an award of benefits. *See id.* But the Tenth Circuit has concluded that "[w]hen a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).

Courts consider several factors when determining whether to award benefits, including "the length of time the matter has been pending," and if, "given the available evidence, remand for additional fact-finding would serve [any] useful purpose" or "merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). When "the record fully supports a determination" that a claimant is "disabled as a matter of law" and entitled to the benefits sought, reversal with an award of benefits is appropriate because "additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (internal quotation marks omitted).

Ms. B. has not demonstrated, at this stage, that she is disabled as a matter of law. Although the record evidence of Ms. B.'s intellectual disability is sufficient to require consideration of Listing 112.05, determining whether she meets the paragraph B criteria of this listing requires weighing the evidence to make factual findings regarding her functional limitations. This type of factfinding should be conducted at the administrative level in the first instance. Where the ALJ has made no findings of fact on this issue, remand for further administrative proceedings is appropriate to permit the ALJ to evaluate the evidence of Ms. B.'s alleged intellectual disability.

CONCLUSION

For the reasons set forth above, the court REVERSES the Commissioner's decision and REMANDS the case for further proceedings consistent with this order.

DATED this 15th day of September, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge